IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 5:17cr26-RH

MICHAEL J. BAXTER,

    Defendant.

_____/

**ORDER FOR RELEASE PENDING APPEAL**

The defendant has been convicted and sentenced. He has moved for release pending appeal. He asserts he will be entitled to reversal of the conviction if he succeeds on his claim that the court improperly sustained the government's *Batson* challenge to the defendant's attempt to peremptorily strike a juror. This order grants the motion for release pending appeal.

I

Michael J. Baxter, a major in the Florida Department of Corrections, kicked and used other force against an inmate, inflicting substantial injuries. A grand jury indicted Mr. Baxter on two charges: willfully depriving the inmate of the right not to be subjected to cruel and unusual punishment (count one) and making false

entries in records with the intent to obstruct the Federal Bureau of Investigation's inquiry into the event (count two). A jury convicted Mr. Baxter on count two but acquitted him on count one.

Mr. Baxter moved for a new trial and, alternatively, for release pending appeal. At a hearing on April 12, 2017, the motion for a new trial was denied, Mr. Baxter was sentenced to 60 months in prison, and the motion for release pending appeal was denied. The grounds for the rulings were set out on the record.

The order of April 17, 2018 summarized the rulings. The order denied the motion for a new trial because Mr. Baxter asserted only that the evidence was insufficient and the verdict was internally inconsistent. Those assertions were incorrect. The order denied release pending appeal because Mr. Baxter did not meet the Bail Reform Act's requirement for "a substantial question of law or fact" likely to result in reversal of the conviction or reduction of the sentence. The issues Mr. Baxter raised were not close.

Mr. Baxter now has filed a second motion for release identifying a new issue. He says a juror was improperly seated based on a successful government challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986)—a challenge to Mr. Baxter's attempted peremptory strike of a juror. The government asserted, and I found as a fact, that the reason for Mr. Baxter's attempt to strike the juror was race.

## II

The jury selection process was conducted in open court using actual names, but the court records with names have been maintained under seal. Given the acute animosity this case generated in the small community where the correctional facility at issue is located—a witness who told investigators the truth recounted with considerable angst the consequences she suffered in the community—the names of the jurors should not be publicized unnecessarily. The parties have used initials in their filings. This order uses the same initials.

The venire originally consisted of 39 members. Scheduling conflicts and cause challenges reduced the number to 29. Of those, 26 were white and 3 were African-American. The order in which they would come up for placement on the jury or for peremptory challenge was set in advance. Back strikes were not allowed.

Ms. M—the African-American who was the subject of the *Batson* challenge—was tenth in line. Of the prior nine members of venire, the defense had been called on to accept or strike only seven; for the other two, the government went first and exercised a peremptory strike. The defense accepted five of the seven and struck two. Four of those accepted were white; one was African-American. One of those struck was white; the other African-American.

The defense announced that it would strike Ms. M, putting the tally at one African-American accepted, two struck. The government objected, citing *Batson*. Having heard many *Batson* challenges, I of course know the process: decide whether the challenger has established a prima facie case of a *Batson* violation; if so, allow the striking attorney to proffer a legitimate, nondiscriminatory reason for the strike; and finally, make a finding on the controlling question—whether the proffered reason is pretextual and the real reason for the strike is race. *See, e.g.*, *Batson*, 476 U.S. at 96-98: *United States v. Folk*, 754 F.3d 905, 913 (11th Cir. 2014). I also know, however, that making a good record is important. My practice is to allow the striking attorney to proffer a reason every time there is a *Batson* challenge. This way, if I decide the challenger did not make out a prima facie case but the Eleventh Circuit disagrees, a new trial can still be avoided if the *Batson* challenge fails later in the process.

This approach serves the interest of both sides and both courts—this court and the Eleventh Circuit. Whether a challenger has established a prima facie case is often a much closer question than whether there was a legitimate, nondiscriminatory reason for the strike. My estimate is that in well over 90% of cases, the *Batson* issue ends—the correct ruling becomes clear and the challenger abandons the issue—upon proffer of the legitimate, nondiscriminatory for the strike. Cutting short the process on an initial finding of no prima facie case would

unnecessarily keep the issue alive, leading to continued wrangling and ultimately to appeals that easily could have been avoided.

Following this approach, I did not explicitly announce on the record, before soliciting the reasons for striking Ms. M, that the government had established a prima facie case. But the government had done so. The defense had struck two of the three African-American members of the venire for no apparent reason. It was a small sample, and using statistics to draw inferences for small samples is hazardous. But the defense had accepted 80% of the whites and just 33% of the African-Americans. This in a case with substantial racial overtones.

The defense proffered an explanation that was racially neutral and, if it had been the real reason for the strike, would have defeated the *Batson* challenge. The defense said Ms. M "apparently has slight negative body language." ECF No. 67 at 145. The defense said the first African-American it struck, Mr. C, had "sweat on his forehead." *Id*. at 146. The defense elaborated, but these comments capture the tenor of the proffer. My finding of fact is that the defense explanations were pretextual and that the real reason Ms. M was struck was her race. The same was probably true of Mr. C.

III

The Bail Reform Act sets out the standards that govern release pending appeal. Release can be granted only if the court finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community, if released . . .; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>
> (i) reversal,
>
> (ii) an order for a new trial,
>
> (iii) a sentence that does not include a term of imprisonment, or
>
> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. §3143(b)(1).

As the government acknowledges, Mr. Baxter is not likely to flee or to pose a danger to any other person or the community. I so find by clear and convincing evidence. Mr. Baxter's appeal has not been taken for the purpose of delay, and the *Batson* argument, if successful, will likely result in a new trial.

The critical inquiry, therefore, is whether this is "a substantial question of law or fact." The Eleventh Circuit has given this definition: "a 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." *United States v. Fernandez*, 905 F.2d 350, 354 (11th Cir. 1990) (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)).

My *Batson* ruling was correct. The defense attempted to strike Ms. M for one reason only: her race. I so found at the time, and I adhere to that finding now.

In asserting the contrary, Mr. Baxter cites *United States v. Folk*, 754 F.3d 905 (11th Cir. 2014). The case provides scant support for his position. There, as here, a party used peremptory strikes on two of three African-American members of the venire. The district court found no discrimination and denied a *Batson* challenge. This was plainly the correct ruling; the record showed legitimate, nondiscriminatory reasons for striking the two African-Americans. The Eleventh Circuit affirmed, holding that the district court's finding of fact was not clearly erroneous.

To be sure, the Eleventh Circuit also suggested that perhaps the challenger had not even established a prima facie case. But that suggestion was not a ruling, and in any event the circumstances were different. In *Folk*, unlike here, the record already showed an unchallenged, nondiscriminatory basis for exercising the only prior strike of an African-American. Moreover, in *Folk*, the trial was not expected to have a substantial racial component, but here race was expected to be a substantial issue. This is a factor properly taken into account in applying *Batson*. That there was no *Batson* violation in *Folk* says little about whether there was a *Batson* violation here.

In sum, I adhere to my ruling on the government's *Batson* challenge. *Folk* does not change this. But a district court's belief that its ruling is correct does not, without more, defeat a motion for release pending appeal. Appellate courts exist for a reason: sometimes trial courts get it wrong. Considering all the circumstances, including the *Folk* dictum, I conclude that the *Batson* issue is, in the language of *Fernandez*, a close question that very well could be decided the other way. Mr. Baxter ought not have to serve his sentence before the Eleventh Circuit decides his appeal. He has met the governing standard under the Bail Reform Act.

IV

For these reasons,

IT IS ORDERED:

The second motion for release pending appeal, ECF No. 73, is granted. The Bureau of Prisons must release the defendant Michael J. Baxter after processing and after the Bureau receives notice from an assigned probation officer that satisfactory arrangements have been made for Mr. Baxter's transportation from his designated facility to his home. The time during which the defendant is on release pending appeal will not be credited on the sentence of imprisonment or supervised release. The release conditions in this order are binding on Mr. Baxter from the moment of his release. These are the release conditions:

1. The defendant must report to the probation office in this district within 72 hours after release from the Bureau of Prisons and must sign at that time the advice of penalties and sanctions and the acknowledgment of these release conditions, as set out below.

2. The defendant must not commit an offense under federal, state, or local law.

3. The defendant must appear at all proceedings as required and must surrender for service of a sentence as directed. If the defendant's conviction is affirmed or the United States Court of Appeals for the Eleventh Circuit dismisses the appeal, the defendant must surrender for service of the existing sentence by 2:00 p.m. on the 30th day after issuance of the Eleventh Circuit's mandate, unless, prior to that time, an order has been entered setting a different deadline. Filing of a petition for a writ of certiorari will not affect the deadline to report for service of the sentence.

4. The defendant must reside in the residence where he resided while on pretrial release in this case or another residence approved in advance by the assigned probation officer.

5. The defendant must not travel outside the Northern District of Florida unless the assigned probation officer authorizes the travel in advance.

6. The defendant must report to the assigned probation officer in person or by telephone as the officer directs—but not less often than weekly—and must truthfully answer all the probation officer's inquiries.

7. The defendant must avoid all contact with any alleged victim or potential witness.

8. The defendant must not possess a firearm, destructive device, or dangerous weapon.

9. The defendant must not use alcohol to excess.

10. The defendant must not use or possess a narcotic drug or other controlled substance—as defined in 21 U.S.C. § 802—unless prescribed by a licensed medical practitioner.

11. The defendant must submit to testing for controlled substances or alcohol as and when the assigned probation officer directs.

12. The defendant must surrender any passport to the clerk of court and not obtain a passport.

13. The defendant must notify the assigned probation officer as soon as possible, and in any event within 72 hours, after a law enforcement officer contacts or speaks to the defendant other than in connection with this case, whether or not the defendant is arrested.

14. The defendant must maintain employment to the best of his ability.

# ADVICE OF PENALTIES AND SANCTIONS

Violating any of the release conditions may result in the immediate issuance of a warrant for the defendant's arrest, a revocation of release, an order of detention as provided in 18 U.S.C. § 3148, and a prosecution for contempt of court as provided in 18 U.S.C. § 401. This could result in a term of imprisonment and a fine.

The commission of an offense while on pretrial release in this case may result in an additional sentence in this case of between two and ten years, if the offense is a felony, or between 90 days and one year, if the offense is a misdemeanor. This additional sentence must be consecutive to any other sentence.

Under 18 U.S.C. § 1503, it is a crime punishable by up to five years in prison and a $250,000 fine to intimidate or attempt to intimidate a witness, juror, or officer of the court. Under 18 U.S.C. § 1510, it is a crime punishable by up to five years in prison and a $250,000 fine to obstruct a criminal investigation. Under 18 U.S.C. § 1512, it is a crime punishable by up to ten years in prison and a $250,000 fine to tamper with a witness, victim, or informant. Under 18 U.S.C. § 1513, it is a crime punishable by up to ten years in prison and a $250,000 fine to retaliate against a witness, victim, or informant, or threaten or attempt to do so.

Under 18 U.S.C. § 3146, it is a crime for a defendant who has been released to knowingly fail to appear as required by the conditions of release or to knowingly fail to surrender for the service of a sentence. The maximum sentence under § 3146 is

(1) ten years in prison and a $250,000 fine if the maximum sentence for the underlying offense is death, life in prison, or a prison term of 15 years or more;

(2) five years in prison and a $250,000 fine if the maximum sentence for the underlying offense is five to 15 years in prison;

(3) two years in prison and a $250,000 fine if the underlying offense is any other felony; and

(4) one year in prison and a $100,000 fine if the underlying offense is a misdemeanor.

The prison term for failing to appear or surrender must be consecutive to any other prison term. In addition, failing to appear or surrender may result in forfeiting any bail.

## THE DEFENDANT'S ACKNOWLEDGMENT

I am the defendant in this case. I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and, if my conviction is affirmed or my appeal is dismissed, to surrender for service of the sentence as required. I am aware of the penalties set out above.

_____
Michael J. Baxter
Defendant

## DIRECTIONS TO THE BUREAU OF PRISONS

The Bureau of Prisons must release the defendant after processing and after the Bureau receives notice from an assigned probation officer that satisfactory arrangements have been made for Mr. Baxter's transportation from his designated facility to his home.

SO ORDERED on July 6, 2018.

s/Robert L. Hinkle
United States District Judge